UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

AUZIO HEWLETT,

        Petitioner,

        v.                          Case No. 07-C-0597

UNITED STATES OF AMERICA,

        Respondent.

DECISION AND ORDER DENYING HEWLETT'S MOTION FOR LEAVE TO AMEND
(DOC. 20), DENYING AMENDED MOTION UNDER 28 U.S.C. § 2255 (DOC. 5),
DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE

       This case comes before the court on Auzio Hewlett's motion to vacate his conviction pursuant to 28 U.S.C. § 2255. A jury found Hewlett and his co-defendant, Alfred Gary, guilty of conspiracy to distribute and to possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and 18 U.S.C. § 2. Hewlett was sentenced to 240 months imprisonment and Gary received a life sentence. On appeal, both defendants argued there was an impermissible variance between the single conspiracy charged in the indictment and the proof at trial, and that this court committed reversible error in responding to a jury question during deliberations. The Seventh Circuit Court of Appeals affirmed the judgments of conviction. *United States v. Hewlett*, 453 F.3d 876 (7th Cir. 2006).

       Following the direct appeal, Hewlett filed a petition under 28 U.S.C. § 2241 in the Northern District of Texas arguing that a § 2255 motion was inadequate to test the legality of his detention and that the Controlled Substances Act violates the Tenth Amendment and exceeds the federal government's power under the Commerce Clause. The district court

dismissed the petition for lack of jurisdiction, and the Fifth Circuit Court of Appeals affirmed. *Hewlett v. Holder*, 477 Fed. App'x 230, 2012 WL 1850391 (5th Cir. 2012). Consequently, this court turns to the merits of the § 2255 motion.

As a preliminary matter, Hewlett filed a motion for leave to amend—long after filing his reply brief in the case—making the same argument he raised in his § 2241 motion. Hewlett argues that *Bond v. United States*, 131 S. Ct. 2355 (2011), allows him to challenge federal drug charges when the state prohibits the same conduct. In *Bond,* the Supreme Court held that a defendant indicted for violating a federal statute had standing to challenge the statute's validity on the ground that it intruded on the sovereignty and authority of the States in violation of the Tenth Amendment. *See id.* at 2360, 2367.

There are several reasons the court must deny Hewlett's motion to amend. First and foremost, the request is untimely. While Hewlett may argue that the statute of limitations runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," 28 U.S.C. § 2255(f)(3), the decision upon which he relies is not a new rule of constitutional law made retroactive to § 2255 motions.

Additionally, Hewlett's argument is misplaced. Congress has the power under the Commerce Clause "to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17, 125 S. Ct. 2195 (2005); *see also Fry v. United States*, 421 U.S. 542, 547, 95 S. Ct. 1792 (1975) ("Even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations."). It is well established that drug

2

trafficking constitutes a class of activities that necessarily affects interstate commerce. *See Gonzales*, 545 U.S. at 15-17; *see also United States v. Westbrook*, 125 F.3d 996, 1009 (7th Cir.1997) ("Congress validly exercised its authority under the Commerce Clause when it enacted the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, which includes the cocaine distribution conspiracy statute, 21 U.S.C. § 846.").

In his original § 2255 motion, Hewlett asserts that (1) counsel was ineffective in failing to move to dismiss based on a violation of his speedy trial rights for the period between the declaration of a mistrial and his conviction; (2) the trial court amended the indictment improperly when it failed to instruct the jury on the essential element of possession; (3) counsel was ineffective in failing to move for acquittal based on insufficient evidence to establish that the offense occurred between the dates alleged in the indictment; (4) counsel was ineffective in failing to argue that retrial was barred by the double jeopardy clause because the prosecution engaged in misconduct to provoke the defense into requesting a mistrial to give the prosecution more time to build its case; (5) trial counsel was ineffective for failing to investigate the facts surrounding a traffic stop, and appellate counsel was ineffective for failing to appeal the denial of his suppression motion; (6) the court was without jurisdiction to convict and sentence him regarding cocaine base because the drug is not listed on the controlled substance schedule; (7) trial counsel was ineffective for failing to seek dismissal of the case in this district based on pretrial delay and shuttling of proceedings from the Western District of Wisconsin to the Eastern District of Wisconsin; and (8) the court violated his Fifth and Sixth Amendment rights because a sentencing enhancement was based on a prior nolo contedere conviction. For the reasons set forth below, the motion will be denied.

3

With respect to his speedy trial claims, Hewlett argues that he was denied his constitutional right to a speedy trial due to the delay between his mistrial and new trial and that counsel was ineffective for not raising the issue before the trial court. Hewlett was brought to trial on October 1, 2003, but a mistrial was declared on October 2, 2003. The defendants had moved for a mistrial following a comment made by the prosecutor in his opening statement. The second trial began February 23, 2004. But significant activity occurred in between the mistrial and the second trial. Initially, just a month after the mistrial, trial was reset for Monday, November 3, 2003. However, on October 7, Hewlett's co-defendant, Alfred Gary, moved to dismiss the case on double jeopardy grounds, and the government responded with a motion to strike Gary's motion to dismiss. *United States v. Hewlett*, No. 03-CR-23, Docs. 69, 70 (filed Oct. 7, 2003). During a hearing on October 20, 2003, both motions were withdrawn. *United States v. Hewlett*, No. 03-CR-23 (E.D. Wis. filed July 5, 2005). On the Friday before the second trial was to start, Gary filed an amended motion to dismiss *United States v. Hewlett*, No. 03-CF-23, Doc. 77 (E.D. Wis. filed Oct. 30, 2003).

That same day, the court held a hearing on the amended motion to dismiss and denied the motion on the record. *United States v. Hewlett*, No. 03-CR-23, Doc. 149 (E.D. Wis. filed July 5, 2005). Because the hearing was called on Gary's motion, Gary appeared by telephone, but Hewlett did not appear. However, both defendants' attorneys were present in court, along with two government attorneys. Toward the end of the hearing, the government requested an adjournment because the father of the primary prosecutor had suffered a stroke in Texas. The supervisor of the primary prosecutor stated that she wanted the primary prosecutor "to get on a plane tomorrow morning to go see his father

4

and be with his family. . . . Nonetheless, Mr. Gonzales has made it entirely clear to me that if the case stays on the trial schedule for Monday he will be here and will be trying it." *Id.* at 35.

Gary's counsel expressly stated that he would not oppose an adjournment because of the prosecutor's situation: "In regard to the request for the set over, . . . I'm not going to oppose that. We're human beings, we're lawyers, and we're also human beings." *Id.* at 36. Gary himself did not voice an objection. Nor did Hewlett's counsel, who was present, voice an objection.

The clerk at the hearing offered December 1, 2003, as a new trial date, but Gary's counsel had a conflict with that date. *Id.* at 37. The parties were then directed to contact the clerk the next day (or next business day) to reschedule the trial. *Id.* at 38. In granting an adjournment, the court stated the following:

> It does appear that there is good cause for the delay inasmuch as the principal prosecutor in this case has a family member with a serious medical problem and it will be necessary for Mr. Gonzales to travel to attend to his father and to visit with him as a result of a stroke.
> We will try to get this on so as not to interrupt any other matters that have to be attended to by the parties, but I'm not certain whether or not we can accommodate everybody's schedule but we will do the best we can.

*Id.* at 38.

A few weeks later, on December 15, 2003, the court held a final pretrial conference at which Hewlett and Gary both appeared in person. A February 23, 2004, trial date was confirmed. The court noted that Hewlett had not been on the telephone during the prior hearing and asked Hewlett's counsel if she wished to be heard on any matters and whether she was prepared to go forward with trial. She stated that Hewlett had been apprised of the prior proceedings and that she was prepared to go forward on February 23. No

5

objection was made to the new trial date. Also on December 15, 2003, the court issued written orders denying Gary's first and amended motions to dismiss. *United States v. Hewlett*, No. 03-CR-23, Docs. 81, 82 (E.D. Wis. filed Dec. 15, 2003).

In pursuing the instant motion, Hewlett asserts that he was denied his statutory speedy trial and constitutional rights to a speedy trial following the declaration of a mistrial and the conviction under attack. Additionally, he contends that he was denied his right to effective assistance of counsel when his attorney failed to move to dismiss the indictment based on this violation. Each argument will be addressed in turn.

Under the Speedy Trial Act, a new trial must "commence within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). However, Hewlett waived any statutory speedy trial claim because he did not raise it before trial. 18 U.S.C. § 3162 (a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."); *United States v. Morgan*, 384 F.3d 439 (7th Cir. 2004).

Regardless, Hewlett faults trial counsel for this waiver. To show ineffective assistance of counsel, Hewlett must show that counsel's representation was deficient, i.e., that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance standard permits a wide latitude of attorney conduct, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks deleted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). If the prisoner has identified specific omissions, the court must determine "whether, in light of all the circumstances, the

6

identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Once the prisoner establishes his counsel's ineffectiveness, he must still demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Hewlett's ineffectiveness claim fails on either prong. First, counsel cannot be deemed deficient for not raising a speedy trial dismissal motion, as such a motion would have been questionable. When no motion for severance has been granted, a defendant's time under the Speedy Trial Act is affected by a co-defendant's time, and delay resulting from pretrial motions is automatically excluded. *See* 18 U.S.C. § 3161(h)(6). Thus, at the least (depending on whether the time for disposition of the motions was the hearing on Gary's motion to dismiss or the date of the written orders), the time while Gary's motions—from October 7 through October 20, and October 30—was excluded. But additional time was permissibly excluded as well.

Section 3161(h)(7)[1] excludes any period of delay resulting from a continuance granted by the judge if granted on the basis of findings that the ends of justice served by the adjournment outweigh the interest of the public and defendant in a speedy trial. The factors a judge considers include whether a failure to grant a continuance would deny the defendant or government continuity of counsel. 18 U.S.C. § 3161(h)(7)(B). Although the court's comments regarding a trial delay did not track the language of this provision, the court's finding that there was "good cause" for the delay because of the prosecutor's family

---

[1]The subsections were renumbered in 2008; this subsection was subsection (h)(8) at the time of Hewlett's criminal case.

Case 2:07-cv-00597-CNC   Filed 03/27/13   Page 7 of 21   Document 21

emergency encompassed a determination regarding continuity of counsel under § 3161(h)(7)(B). That finding excluded from the calculation all time from November 3 to the new trial date on February 23. An argument that the court's failure to use magic language from the statute could have been considered frivolous, and counsel cannot be faulted for not arguing it.

For the same reason, Hewlett cannot demonstrate prejudice. Had counsel timely moved to dismiss for a Speedy Trial Act violation, the court would simply have clarified its findings regarding the continuance, tracking the "ends of justice" and "continuity of counsel" language. No difference in outcome would have occurred.

In addition to his statutory claim, Hewlett raises a constitutional speedy trial claim. The Sixth Amendment guarantees an accused "the right to a speedy and public trial." U.S. Const. Amend. VI. Hewlett contends that the pretrial delay before retrial violated his Sixth Amendment right to a speedy trial. While related, the constitutional and statutory rights to a speedy trial are distinct. This means that "a violation of one [right] may be found without a violation of the other." *United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006). A Sixth Amendment speedy-trial claim turns on (1) whether the pretrial delay was exceptionally long, (2) whether the government or the defendant is more responsible for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether the defendant suffered prejudice as the delay's result. *Doggett v. United States*, 505 U.S. 647, 651, (1992). However, these factors do not support Hewlett's Sixth Amendment speedy trial claim.

As an initial matter, the length of time from accusation to trial is a triggering mechanism—without a delay that is presumptively prejudicial, the court need not examine

8

the other factors. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The constitutional right attaches only after an arrest, an indictment, or some other form of official accusation. *United States v. Souffront*, 338 F.3d 809, 835 (7th Cir. 2003). Generally, courts have found delays approaching one year to be presumptively prejudicial. *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000). In this case, officers arrested Hewlett on May 20, 2003; he was arraigned on June 6, 2003; a mistrial was declared on October 2, 2003; and the subsequent trial leading to the conviction that is under attack commenced on February 23, 2004. The nine-month period between arrest and conviction, while not presumptively unreasonable, is long enough to warrant a more searching analysis. *Compare United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1127 (7th Cir. 1984) (finding a pre-trial delay of eight months presumptively prejudicial) *with Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (finding that a pre-trial delay of eight months in a robbery case did not constitute presumptive prejudice). Deciding that a delay is presumptively prejudicial requires the court to next "consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652.

The length of delay in this case does not weigh strongly in Hewlett's favor. Hewlett was arrested only a few days prior to arraignment and was tried and convicted less than nine months after he was arraigned. His aborted first trial was commenced about four months after arraignment. During that period, Hewlett filed motions to suppress and to dismiss and co-defendant Gary filed a motion to suppress, *United States v. Hewlett*, No. 03-CR-23, Docs. 17, 18, 23 (E.D. Wis. filed June 25, 2003, and July 7, 2003), the magistrate judge held evidentiary hearings and issued recommendations, Hewlett objected

9

to a recommendation, Hewlett asked for adjournment of trial once and consented to another short adjournment. Following the mistrial, the delay resulted from Gary's motions and the delay caused by the prosecutor's family emergency and scheduling difficulties of the parties. Therefore, the delay cannot be considered unreasonably long, and this factor weighs against Hewlett.

The second factor in assessing a Sixth Amendment speedy trial claim is the apportionment of blame: who was more at fault for the delay, the defendant or the government? This factor is particularly important, and has been called "the flag all litigants seek to capture." *Williams v. Bartow*, 481 F.3d 492, 506 (7th Cir. 2007). But this factor is neutral here. The mistrial was the result of a government error, but was granted on defendants' motion. The adjournment of the November 3 retrial was no one's fault, and Hewlett did not object to the continuance. Furthermore, the record shows that the government dealt with pretrial matters diligently and timely. Hewlett has not shown that the government stalled his case or that anything other than "neutral" delay occurred, due to ordinary procedures, preparation, and scheduling conflicts, *see Barker*, 407 U.S. at 531; *White*, 443 F.3d at 590, and an unfortunate medical event.

The third factor is whether Hewlett asserted his speedy trial right. In this instance, he did not. So, this factor weighs heavily against Hewlett, because he assented to the delays and no unfair prejudice is apparent. *Barker*, 407 U.S. at 531; *White*, 443 F.3d at 591.

The fourth and final factor is prejudice. In some cases, the length of the delay alone may establish prejudice. *E.g., Doggett*, 505 U.S. at 655-56; *United States v. Arceo*, 535 F.3d 679, 686 (7th Cir. 2008). Time can erode evidence and testimony in ways that defy

10

identification or proof, thereby increasing the significance of any prejudice to a defendant with the passage of time. *Doggett*, 505 U.S. at 655-56. But even when prejudice may be presumed from the length of the delay, prejudice alone will not carry the day for a defendant absent a strong showing with respect to the other factors. *See United States v. Oriedo*, 498 F.3d 593, 600-01 (7th Cir. 2007) (delay of three years was "substantial," but was insufficient to constitute Sixth Amendment violation). Hewlett suggests that he was prejudiced only because his counsel did not seek to vindicate his right to a speedy trial. He does not argue that he suffered actual prejudice as a result of delay before trial. Consequently, the delay factor weighs against him.

Hewlett's claim that counsel was ineffective for not raising this Sixth Amendment right to a speedy trial misses the mark. As with the statutory issue, the court is not persuaded that counsel was deficient for not raising a losing speedy trial argument. Moreover, there is little to no probability that the outcome would have been different. He merely suggests that "one will never know." This court would not have found any time before the first trial—during which Hewlett was filing and arguing motions to suppress and dismiss—to be overly lengthy, leaving only the time between the first and second trials as any concern. But as discussed above, Gary's motions consumed some of that time, and the bulk of the delay was due to scheduling issues following a medical emergency. Thus, this court would not have dismissed the case for a constitutional speedy trial violation.

Next, Hewlett asserts that the court amended the indictment improperly when it failed to instruct the jury on the essential element of possession. Specifically, he suggests that by failing to define possession as actual or constructive for the jury, the court broadened the permissible grounds for his conviction. But this argument is without merit.

11

The Fifth Amendment states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V.  Constructive amendment of an indictment is not permitted because the Fifth Amendment requires the allegations in the indictment and the proof at trial to "match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." *United States v. Trennell*, 290 F.3d 881, 888-89 (7th Cir. 2002).  A constructive amendment occurs when "the government, the court, or both, broadens the possible bases for conviction beyond those presented by the grand jury." *Id.* at 888.

Essentially, Hewlett submits that because the jury was not given a definition of possession, it could have convicted him of constructive possession or actual possession. This argument fails because Hewlett misreads the law of this circuit.  Possession may be actual or constructive, and "there is no legal difference . . . between actual and constructive possession." *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008).  Furthermore, his attorney adhered to the law of this circuit in not objecting to the jury instructions as promulgated; and as such defense counsel's performance could not have been deficient. *United States v. Hewlett et. al.*, No. 03-CR-23, Doc. 163 at 857:48-58:4 (E.D. Wis. filed Aug. 16, 2005). Therefore, Hewlett's attorney did not deny him effective assistance of counsel.

Third, Hewlett contends that the government did not prove that the charged conspiracy took place within or reasonably near to the period stated in the indictment. Indeed, "unless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and

12

within the statute of limitations." *United States v. Leibowitz*, 857 F.2d 373, 378 (7th Cir. 1988) (citations omitted).

Nevertheless, he submits that because the evidence does not show that he and his co-defendant conspired specifically "on or about December 1, 1994 and April 24, 2003," that the evidence was not sufficient to sustain a guilty verdict. But this ignores other proof in the record. The government presented voluminous evidence that the conspiracy took place between December 1, 1994, and April 24, 2003. These were the bookends of the dates charged in the indictment, and the bookends of the dates in which the jury found Hewlett to be participating in a conspiracy. Attempting to focus exclusively on the individual dates is not a colorable legal argument because these dates were not an element of the charged offense. Rather, the range of dates comprised an element necessary to prove the offense. Therefore, Hewlett may not succeed in overturning his conviction by attacking the dates cited in the indictment.

Regardless, Hewlett's attorney challenged the range of dates charged in the indictment, and represented him reasonably. The dates encompassing the conspiracy were not an element of the charged offense. Hence, counsel's failure to pursue them with vigor did not deprive Hewlett of his right to effective assistance of counsel.

Fourth, Hewlett asserts that his attorney's performance was deficient because he failed to seek dismissal of the indictment based upon double jeopardy arising from the "prosecutor's misconduct" that led to a mistrial.

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated trials for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671-672 (1982). In general, a defendant has a right to the completion of his trial by the first jury

13

impaneled. *Id.* ("As part of the protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal'"). However, generally, after a mistrial has been declared, the Double Jeopardy Clause will not bar retrial if there is a "manifest necessity" for the government to retry the defendant. *Id.* Moreover, the Double Jeopardy Clause will not bar retrial when the defendant has moved for a mistrial ordinarily. *Id.* at 673.

Rather than a full-scale prohibition, courts have recognized a "narrow exception" to the general rule that the Double Jeopardy Clause will not bar retrial, which applies where the defendant can show that prosecutorial or judicial misconduct caused the defendant's mistrial request. *Id.* Here, Hewlett attempts to invoke this rule, suggesting misconduct on the part of the Assistant United States Attorney arising from remarks during his opening statement to the jury.

In *Kennedy*, the Supreme Court clarified the parameters of the bar on retrial based on prosecutorial or judicial misconduct regarding the scope of that "narrow exception." *Id.* at 679. The touchstone for the analysis is the intent of the prosecutor. *Id.* at 676. If the prosecutor acted intentionally to "goad" the defendant into moving for a mistrial, the Double Jeopardy Clause may apply. *Id.* However, the Court stressed that "prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion," is not by itself sufficient to bar retrial. *Id.* at 676-677. Instead, there must be evidence that the prosecutor "intended to goad" or "intended to provoke the defendant into moving for a mistrial." *Id.* at 677, 679. Here, in spite of Hewlett's contention, no such evidence exists.

14

Unless the prosecutor is purposefully trying to abort the trial, his misconduct will not bar a retrial. It does not matter that he knows he is acting improperly, provided that his aim is to get a conviction. *Id.* at 675-76. During his opening statement the Assistant U.S. Attorney explained that Hewlett and Gary, smart African-American drug dealers, recruited young white girls in Janesville, Wisconsin, to sell and traffic drugs. (Doc. 76 at 211). When asked by the court to explain his remark, the Assistant U.S. Attorney stated he did not mean anything other than all of the woman who were selling drugs for Hewlett and Gary were white females, i.e., young girls. *Id.* at 233. He added "I didn't mean to say they are white, they should be believed. I didn't mean to say anything to that effect. I simply identified them. And I probably should have thought about it a little bit more . . . I got off track there for a little bit, and made the statement." Continuing, the Assistant U.S. Attorney stated that he did not attempt to elicit a racial response from the jury. *Id.* at 234-235. During later exchanges concerning his opening statement, the Assistant U.S. Attorney noted that during his trial preparation with African-American witnesses, the term "white girls" was commonly used by those witnesses to describe who was distributing drugs for Hewlett and Gary in Janesville, Wisconsin. (*Id.* at 248-249). Subsequently, on the motion of Hewlett's and Gary's attorneys, the court declared a mistrial.

With due regard for the fact that the Assistant U.S. Attorney provided a plausible explanation for his statement that caused Hewlett's counsel to request a mistrial on the ground that it appealed to racial passions, at that stage the government had no reason to goad the defendants into moving for a mistrial. It had a strong case and it appears that the statement was due to a lapse in judgment. As a result, this court finds the Double Jeopardy Clause of the Fifth Amendment did not bar retrying Hewlett.

15

Further, Hewlett and his attorney were aware of Gary's motion to bar retrial on double jeopardy grounds, and chose not to be join that motion. *See United States v. Hewlett*, No. 03-CR-23, Doc. 145 at 3:6-13 (E.D. Wis. filed Jul. 5, 2005), Doc. 150 at 3:17-24 (E.D. Wis. Jul. 5, 2005). This decision represents a reasonable litigation strategy, and as such, Hewlett's attorney performed competently. Therefore, Hewlett was not denied his right to effective assistance of counsel respecting her decision not to seek dismissal of the indictment on double jeopardy grounds.

Next, Hewlett suggests that trial counsel was ineffective for failing to investigate the facts surrounding a traffic stop, and his appellate counsel was ineffective for failing to raise on appeal the denial of his suppression motion. Assuming, *arguendo*, that these failures constituted deficient performance, the question becomes whether Hewlett was prejudiced by the deficient performance of his trial or his appellate counsel.

It is unclear whether a successful motion to suppress would have destroyed the government's case against Hewlett. In other words, is there is a reasonable probability that, if counsel had pursued the motion, the result of the criminal case would have been different? *See Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Here, even if Hewlett had a protectable privacy interest in the vehicle he was driving and its contents, his motion to suppress could not have been successful because he consented to the search. Therefore, he did not have a reasonable expectation of privacy in the vehicle, and his trial counsel's failure to conduct a more thorough investigation regarding the vehicle's rental history was not prejudicial. In other words, there is no

16

possibility that if trial counsel subpoenaed the rental records for the vehicle the result of the investigation and Hewlett's criminal case would have been different.

With regard to Hewlett's appellate counsel, aside from arguing that she should have raised an argument about the motion to suppress, nothing of substance is offered. Hewlett provides no specific examples of arguments she failed to raise or other issues she did not address on appeal. He has failed to show that appellate counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. While it is clear that appellate counsel elected not to appeal a meritless issue, Hewlett fails to raise any question about that decision. In short, he has made no showing that his appellate counsel acted unreasonably or that any actions she failed to take prejudiced the outcome of his appeal.

Next, Hewlett asserts that the court was without jurisdiction to convict and sentence him because cocaine base (crack) was not on the controlled substances schedule, suggesting that this jurisdiction was improper. Contrary to Hewlett's assertion, cocaine base, as an extract of coca leaves, is and has been recognized as a Schedule II controlled substance. 21 U.S.C. § 812(C)(a)(4). Because Hewlett was charged with a violation of the federal Controlled Substances Act, 21 U.S.C. §§ 841 et seq., it follows that this court had jurisdiction to hear and decide his case pursuant to 18 U.S.C. § 3231, which provides for district court jurisdiction over "all offenses against the laws of the United States."

Admittedly, the Seventh Circuit does not have a rigid definition of crack cocaine, because doing so would invite those in the drug trade to make minor changes in structure, processing, or packaging of the drug to avoid the increased penalties for selling crack cocaine. *United States v. Abdul*, 122 F.3d 477, 479 (7th Cir. 1997). Therefore, instead of

17

applying a rigid definition, this circuit requires a sentencing judge to determine whether a defendant sold "crack," as those who buy and sell in the market generally understand the term. *Id.* The experts in this field are those who spend their lives and livelihoods enmeshed with the drugs—users, dealers, and law enforcement officers who specialize in narcotics crimes. *United States v. Kelly*, 519 F.3d 355, 364 (7th Cir. 2008). One particularly illuminating source can be the accused, as knowledge of the specific substance involved will usually automatically imply knowledge that the substance is controlled. *United States v. Turcotte*, 405 F.3d 515, 525 (7th Cir. 2005). Regardless, this court has no reason to doubt its jurisdiction over the controlled substances violation charged in this case.

Next, Hewlett argues that his trial counsel was ineffective in failing to seek dismissal for violation of the Speedy Trial Act due to the government's shopping between this district and the Western District of Wisconsin. As stated above, the delays in this case occasioned by the various pretrial motions and adjournment for a medical emergency were permissible. The pretrial delays were excludable for purposes of calculating the seventy-day time period under § 3161. As discussed above, there was no Speedy Trial Act violation, but even if there was a statutory violation, counsel was not deficient for failing to seek dismissal and Hewlett suffered no prejudice.

Finally, Hewlett argues that he was denied his Fifth and Sixth Amendment rights because a sentencing enhancement was based on a prior nolo contedere conviction. The Sentencing Guidelines provide that a plea of nolo contendere is considered an adjudication of guilt and that a sentence imposed pursuant to such a plea is properly considered a "prior sentence." *See* U.S.S.G. § 4A1.2(a)(1) (defining "prior sentence" as "any sentence imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere,

18

for conduct not part of the instant offense.").  In addition, as the Seventh Circuit explains, common sense would lead one to conclude that default judgments must constitute "prior sentences" for purposes of assessing criminal history points.  *United States v. Jiles*, 102 F.3d 278, 280 (7th Cir. 1996).  "A contrary rule would create a perverse incentive:  a defendant's failure to appear in court would prevent the use of the conviction as the basis for enhancing a subsequent federal sentence."  *Id.*

Therefore, this court's use of a nolo contendre conviction in sentencing was permissible; it sees no constitutional violation.  Again, Hewlett's attorney's adherence to the law of this circuit by not objecting to consideration of his prior conviction cannot possibly be deficient.  Therefore, Hewlett's attorney did not perform deficiently, and Hewlett was not denied his right to effective assistance of counsel.

An unsuccessful § 2255 movant has no right to appeal the denial of his petition.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003).  Before he may take an appeal to the Seventh Circuit, he must obtain a certificate of appealability.  28 U.S.C. § 2253(c); *see* Rule 11, Rules Governing § 2255 Proceedings.

A certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner makes a "substantial showing" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The certificate of appealability determination is not a second assessment of the merits.  *See Miller-El*, 537 U.S. at 327, 336.  Instead, the determination requires only a

threshold inquiry into the debatability of the district court's decision—"an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. The petitioner need not demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 at 342.

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Davis*, 349 F.3d at 1028, 1029. If the court denies the request for a certificate of appealability, it must state its reasons. Fed. R. App. P. 22(b)(1).

None of the issues raised by petitioner deserves encouragement to proceed further nor is the denial of each issue debatable among jurists of reason. For the same reasons as set forth above, the petitioner has not made a substantial showing of the denial of any constitutional right. Hewlett had an appeal, at which he raised certain issues and could have raised others. His attempt to raise them now, through claims of ineffective assistance of counsel, has failed. Not only are the claims unsuccessful, but his attorneys were not ineffective for failing to raise them. Therefore,

IT IS ORDERED that Hewlett's motion for leave to amend (Doc. 20) movant's motion to vacate, set aside, or correct sentence by a person in federal custody is denied.

IT IS FURTHER ORDERED that Hewlett's § 2255 motion is denied and this case is dismissed.

20

IT IS FURTHER ORDERED that because Hewlett makes no substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

21